The Board of Chosen Freeholders of Middlesex County

*v.*

The State Bank at New Brunswick.

1. New Jersey does not possess the crown's common law prerogative to have its debts paid in preference to the debts of other creditors.

2. On the appointment of a receiver of an insolvent corporation, its title to its property is divested by force of law.

*Mr. Attorney-General Stockton,* for the state.

*Mr. A. V. Schenck,* for receiver.

On the 3d of April, 1877, this court took possession of the State Bank at New Brunswick as an insolvent corporation, and appointed a receiver to convert its assets into money and distribute the same among its creditors according to law. In January, 1877, the state treasurer, pursuant to the requirements of the eleventh section of the act respecting the office of treasurer (*Rev.* p. 1215), deposited nearly $34,000 of the moneys of the state in this bank, which stood to his credit, as treasurer, when the bank suspended business. On the 7th of July, 1877, the treasurer filed a petition in this court, alleging that the state was a preferred creditor of the bank, and praying that the receiver be directed to pay the state's debt first, in preference to the other creditors.

The Vice-Chancellor.

The claim of the state rests upon a prerogative right of the crown of Great Britain, the contention being that the state succeeded to all royal rights, in virtue of its sovereignty, when the crown was displaced here as the sovereign power. The right of the crown in this particular is clear.

Anciently the king might, by his writ of protection, prevent any subject from suing his debtor until his debt was paid. By statute 25 *Edw. III*, ch. 19, its despotic rigor was so far mitigated as to allow the subject to obtain a judgment against the king's debtor, and, upon paying the king's debt, to have execution for both debts. But the prerogative has at all times been most loyally upheld by the English courts. It stands on a common law maxim: *Quando jus domini regis et subditi concurrunt, jus regis præferri debet.* Debts due the crown by record, or upon specialty, are entitled to preference over debts of the same class due to subjects, but simple contract debts due to the crown are not entitled to preference over debts of record due to subjects (*Com. Dig.*, title Administrator, ch. 2; *Bac. Abr.*, title Executor, *L.* 2; 2 *Wms. on Ex'rs* 991); but where both are simple contract debts, that due to the crown must be preferred (*Bac. Abr.*, title Executors, *L.* 2; 2 *Wms. on Ex'rs* 993). The king is supposed to be so constantly engrossed with public business as to be unable to give proper attention to matters relating to his revenue, and, therefore, no time occurs to him, and he is incapable of laches. *Gilbert's His. Exch.* 90. The common method of enforcing this right is by writ of extent, by which the debtor's body may be taken, and also his goods and lands. 2 *Tidd's Pr.* 1044. Upon a debt of record, or upon a specialty, it may issue without any previous suit or proceeding, except an affidavit that the debtor is insolvent and the debt is in danger of being lost. *Ib.* 1046. If the debt is upon simple contract, it may be raised to a debt of record by simply issuing a commission to ascertain the amount due, which is uniformly executed without notice to the debtor, and, on the return of the commission and an affidavit of insolvency and danger, an extent issues as of course. *Ib.* 1047. It may be resorted to during the progress of a suit brought in the ordinary form, and when all liability is denied. *Rex* v. *Pearson*, 3 *Price* 288; *Giles* v. *Grover*, 9 *Bing.* 128. By virtue of it the sheriff may break into the debtor's house, if admission be refused, either to

arrest him or to seize his goods; a debtor taken under it cannot be bailed, nor will his discharge under bankrupt or insolvent laws release him.   2 *Tidd's Pr.* 1049.   In 1832, it was held, by the house of lords, in conformity with the opinion of a majority of the law judges, that the crown's right continues as long as its debtor retains title, whether he retains possession of the property or the law has taken custody of it; it will overreach a prior execution and levy, but cannot reach property either partially or wholly aliened by the debtor.   *Giles* v. *Grover*, 1 *Cl. & Fin.* 72; *S. C.*, 9 *Bing.* 128.   It was also held, in this case, that the crown's right must prevail against a judgment creditor whose judgment, execution and levy were antecedent to an extent in favor of the crown, because the seizure under the prior writ did not change the title, but merely put the property *in custodia legis*, for the benefit of those to whom the law would ultimately adjudge it; but it was unanimously resolved, that if the debtor's title was divested before the *teste* of the extent, the crown's right against the property was gone.

Tindal, C. J., in his opinion, referred to a case decided in the court of exchequer in 1686 (*Att'y-Gen.* v. *Capell*, 2 *Show.* 481), in which it was held, that if an extent comes after the issuing of a commission in bankruptcy, but before an assignment by the commissioners, it will take the property; but if it does not come until after assignment, the debtor's title being divested, it cannot reach the property.

If, by the adoption of the common law, New Jersey became invested with this right, it holds it now in all its original force, and may wield it to-day in all its iron rigor. It has not been changed or mitigated by legislation—indeed, it is unknown in the legislation of the state—and if it exists at all, it is held as perfect and complete as it existed in the hands of George III.   Statutes regulating private rights, or ameliorating private remedies, do not extend to the king (1 *Black. Com.* 261); nor to the state (*O'Hanlon* v. *Van Kleeck, Spen.* 31, 40; *S. C. in error*, 1 *Zab.* 582, 589).   When a statute is general, and thereby any prerogative, right, title or

interest is divested or taken from the king, in such case the king shall not be bound, unless the statute is made to extend to him by express words. *Bac. Abr.*, title Prerogative *E*. 5. If the right exists here, it is untouched by either constitutional or statutory regulation.

But my research has failed to discover a single instance in which it has been recognized by the courts of this state, and only one where it was asserted as a state right. In *Ely* v. *Jones, Coxe* 132, decided in 1792, it was claimed by counsel that the official bond given by a sheriff to the king was in the nature of a recognizance, and bound the obligor's land from the time a breach of the condition occurred, and that a subsequent conveyance, either by the obligor or his heir, passed the land subject to the lien; but the court did not deem it necessary to pass upon the question, being able to decide the case upon another ground. It certainly has never received judicial approval, and, so far as my knowledge extends, no law officer of the state has ever attempted to enforce it. For over one hundred years as an actual, practical prerogative of government, it has neither been exerted nor recognized, and this circumstance, as a matter of contemporaneous and long-continued construction by all departments of the government, would seem to negative the existence of the right with great emphasis. A prerogative which has remained so long practically useless can hardly be said to exist. By an act passed June 13, 1799 (*Pat.* 435), it was enacted, that when the estate of any decedent was insufficient to pay all his debts, the physician's bill during the last sickness, funeral expenses and judgments entered of record during the life-time of the decedent, should be first paid, and that the balance of the estate should be distributed among his creditors in proportion to the sums due them respectively. This act, in substance, has continued in force up to this time. *R. L.* p. 766; *Elmer's Dig.* 169; *R. S.* p. 346; *Nix. Dig.* (4th ed.) 419.

In the first edition of *Ewing's N. J. Justice*, published in 1805, it is said (p. 69): " All the ancient law-learning

respecting the priority of debts is entirely done away by the act of June 13, 1799," and Mr. Griffith subsequently declared it to be his opinion that our laws give no preference to debts of any kind due to the state; they stand only on the same footing as other debts, according to their degree. 4 *Grif. Law Reg.* 1281, *note* 2. And an author, quite as eminent as a jurist as any name that ever adorned the American bench, has stated, that the right of preference of a state, in this country, does not rest upon the common law, but exists only where given by statute. 1 *Kent's Com.* 248, *note* (*c*). The federal government unquestionably possessed as high a prerogative right, as a creditor, as any sovereignty could under a government republican in form, yet it never attempted to exercise the crown's common law prerogative in this respect, but, as early as 1797, established a right of preference by statute. *U. S. Rev. St.* 691. And it has been held that this statute must be strictly construed, it being in derogation of the common right of creditors of the same class to be paid equally. 1 *Kent's Com.* 247. It has been thrice adjudged in South Carolina that this prerogative was so purely an attribute of a despotic government, and so strongly in antagonism to the cardinal objects of a government established by the people for their common protection and security, that it could not, either as a matter of law or reason, be held to belong to the latter, as one of its inherent functions, in the absence of an express legislative declaration to that effect. *Commissioners of Public Accounts* v. *Greenwood,* 1 *Desau.* 450 (arguments of counsel will be found in the appendix, 599); *State* v. *Harris,* 2 *Bailey* 598; *Keckley* v. *Keckley,* 2 *Hill's S. C. Ch.* 250, 256. Debts which arise *ex contractu,* and are, therefore, due to the state in her corporate capacity, or debts which arise *ex delicto,* and which are the punishment of the law for misdemeanors, are not entitled to preference over debts due to the citizen. *State Bank* v. *Gibbs,* 3 *McCord (Law)* 377. Neither the research of counsel, nor my own, has brought to my attention but a single case, decided by an American court, in which this right, as an

attribute of government, has received judicial sanction. *Maryland* v. *Bank of Maryland*, 6 *Gill & Johns.* 205. This case does distinctly declare, that by the adoption of the common law, the state of Maryland became invested with the prerogative in question, but not of its harsh and oppressive incidents.

It was held, the state simply acquired the pre-eminent right, without the writ of protection or extent, and could only enforce the right by such remedies as the citizen was at liberty to employ. By what means these incidents were lost is not stated. I think it would be quite difficult to show how they were lost. Unless altered by legislation, I think if the right is admitted at all, it must be allowed to stand in all its original rigor. But, what is more pertinent to the question in hand, it was also held in this case, that any act which divests the title of the debtor and puts his property in the hands of others for the benefit of his creditors, cuts out the right of the state. In all its essential features that case was identical with this. The treasurer of the Western Shore of Maryland had on deposit in the Bank of Maryland, when it became insolvent, over $50,000; the bank assigned its property to trustees for the equal benefit of its creditors, and thereupon the state filed a bill in equity, alleging that the trustees, in the proper execution of their trust, were bound to pay the state first, in preference to the other creditors. Judgment of dismissal was pronounced, on the ground that the moment the debtor's title was divested by assignment the right of the state expired.

In my opinion, a judgment which adjudges this prerogative to the state, will give it what, in the unanimous judgment of a long line of distinguished law officers, it never had—if their persistent refusal to assert it can be regarded as any evidence of their judgment—and what has but feeble support in the judicial opinion of the country. My judgment is, the state does not possess the prerogative claimed. But if my examination of the question had led me to a dif-

18

ferent conclusion, still, I think, the claim could not be sustained. The authorities of both countries unanimously agree that the right dies the moment the debtor's title is divested. No claim was made by the state in this case until after a receiver had been appointed. That appointment invested him with full power to sell, assign and convey all the property of the corporation (*Rev.* p. 189, § 72). No act by the corporation is necessary to complete either the title of the receiver or that of his purchaser. Unlike proceedings under bankrupt laws, no assignment by the debtor or commissioners is required. Title is divested by force of law, and such divestiture is perfect and absolute.

The order asked must be denied, and the petition dismissed.